
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL JAY WOODS, et.al.,
    Plaintiff,

vs.                                                                                                  04-1440

RICHARD MORRIS, et al.,
    Defendants.

### ORDER

This cause is before the court for consideration of the defendants' second motion for summary judgement. [d/e 144].

### I.  BACKGROUND

This case was originally filed by seven current or former inmates at the Knox County Jail pursuant to 42 U.S.C. §1983 and various other federal laws against six defendants. The court has subsequently dismissed two plaintiffs, granted one defendant's motion to dismiss the claims against it and granted a partial summary judgement as to some claims and defendants. *See* March 8, 2006 Court Order; July 27 2006 Court Order; January 4, 2007 Court Order; and September 18, 2007 Court Order.   Plaintiff's Michael Woods, Jerry Mabry, Michael Judy, Blake Kallenbach and Carl Halloway have the following surviving claims:

> **1) Defendant Morris was deliberately indifferent to the serious medical needs of Plaintiff Mabry when the plaintiff was denied prescription medication for a painful ear injury.**
> **2)  Defendant Morris failed to protect Plaintiff Mabry on July 8, 2004, when the plaintiff was handcuffed to another inmate with a history of assaults and mental illness.  The plaintiff was assaulted and injured.**
> **3) Defendant Morris violated Plaintiffs Woods and Kallenbach's due process rights when they were placed in punitive segregation without any notice of the charge or formal hearing.**
> **4) Defendant Morris retaliated against Plaintiffs Mabry, Kallenbach and Woods for either filing grievances or speaking to the media about jail conditions.**
> **5) Defendants Morris and Knox County violated the First Amendment when they denied all of the plaintiffs access to all newspapers and media publications without any rational basis.**

In it's September 18, 2007 order, the court noted that the first motion for summary judgement left many unanswered questions.   Throughout the order, the court either propounded questions that the parties needed to address or highlighted information that was not before the

court. September 18, 2007 Court Order, p. 13, 19, 20, 21, 23. Therefore, the court directed the defendants to submit a second, well-supported motion for summary judgement on the plaintiff's surviving claims. The defendants have now filed that motion and the plaintiffs have filed a response.

The court notes that the defendants have chosen not to address one claim: that Defendant Morris failed to protect Plaintiff Mabry on July 8, 2004. Mabry says he was handcuffed to another inmate that Morris knew had a history of assaults and mental illness. The plaintiff was assaulted and injured. Therefore, the court will not address the plaintiff's arguments concerning this claim and it will be set for trial.

## II. FACTS

### A. PLAINTIFF MABRY/ DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION

Crystal Crain states that she has been employed as a nurse at the Knox County Jail since September of 2003. On July 8, 2004, Plaintiff Mabry was assaulted by another inmate. Crain says she examined the plaintiff and he complained of pain in his right ear. Mabry says his ear was bleeding. Crain says she did not observe any drainage in his ear, but sent him to the emergency room at St. Mary's Medical Center for further examination and treatment.

Nurse Crain says after the plaintiff's visit to the hospital, she reviewed the emergency room medical record. The plaintiff was diagnosed with an abrasion to his right ear canal and a contusion to his right ear. Plaintiff Mabry was prescribed Tylenol for pain as need and was prescribed Cortisporin Otic ear drops for the abrasion to his ear. The plaintiff was instructed to use the ear drops for seven days or until the abrasion healed to prevent infection. The defendants do not dispute that the plaintiff never received the ear drops. (Def Reply, p. 3)

Nurse Crain says she next saw the plaintiff during a follow-up visit on July 12, 2004. Crain says she examined the plaintiff's ears and did not observe any signs of infection. Plaintiff Mabry "denied that he was in any pain or discomfort." (Def. Memo, Ex. A., Crain Aff. ,p. 1). Crain says she wrote in the medical records that "Mabry should continue with his ear drops." *Id.* Crain says Mabry did not mention that he had not received the ear drops at this visit. Plaintiff Mabry disagrees and says he did report his lack of ear drops. Mabry says the nurse told him where he needed to pick up his eardrop prescription.

On July 23, 2004, Plaintiff Mabry filled out a medical request form complaining of a headache and ear pain. Nurse Crain examined the plaintiff and did not observe any infection in his right ear. Therefore, the nurse did not order any additional ear drops for the plaintiff. However, Crain did prescribe additional Tylenol, 500 mg., for the plaintiff as needed.

Plaintiff Mabry says when he told the nurse he still did not have eardrops, she went to get them herself and noticed that the prescription had expired. She said she could not renew them

without talking to Defendant Morris. The plaintiff says he also asked Defendant Morris about the eardrops who said he would look into it, but never responded.

On July 24, 2004, Plaintiff Mabry filled out another medical request form complaining of a headache and ear pain. Nurse Crain examined the plaintiff on July 27, 2004 and noted that Mabry denied having a headache on that day. Mabry told the nurse that his headache "comes and goes." (Def. Memo, Ex. A., Crain Aff, p. 2). The nurse says her examination of the plaintiff noted no irregularities. The plaintiff showed no signs of an ear infection. The nurse did order that Mabry continue on Tylenol for 10 days.

Crain says Mabry did not fill out any medical request forms or complain about ear pain again until September 7, 2004. The plaintiff disagrees and says his next form was dated September 2, 2004. As proof, the plaintiff points to his deposition were he was asked questions about a request form dated September 2. The deposition indicates that the plaintiff was seen by a nurse, was given Tylenol and an appointment was made with the jail doctor. The plaintiff has not provided a copy of an additional request form. These events are the same events the defendants say occurred on September 7, 2007. The record is not clear which date is correct.

The records do indicate that after the plaintiff saw the nurse, he saw Dr. Norm Johnson on September 8, 2004. The plaintiff complained of a headache due to his previous injury. He complained of pain on the right side of his neck. The doctor prescribed Ibuprofen, 600 mg., for seven days. The doctor did not note any ear infection nor did he prescribe ear drops.

September 8, 2004 was Mabry's final medical request concerning headaches and ear pain. Nurse Crain states that during her treatment and examinations of the plaintiff, she never observed any infection in the plaintiff's right ear or any evidence or permanent damage to his eardrum. (Def. Memo, Ex. A., Crain Aff, p. 2).

Richard Morris was the Jail Administrator at the Knox County Jail until September of 2005. Morris says that he had no personal involvement with Plaintiff Mabry's medical treatment at the jail. In addition, the defendant says Mabry did not submit any requests or grievances concerning a denial of ear drops until July 23, 2004, more than a month after his initial visit.

B. PLAINTIFF KALLENBACH/ DUE PROCESS AND FIRST AMENDMENT RETALIATION.

Plaintiff Kallenbach says he submitted a grievance form on August 7, 2004 about jail conditions. The defendants say it was not a grievance but a "General Request Form." (Plain Mot, ex. 1). The defendants do not explain the difference between a grievance and a request form. Defendant Morris responded on August 9, 2004 stating that the plaintiff was placed on the sick call list to address his medical concerns and "someone so unhappy with being in custody should think about posting bond." (Plain. Mot, Ex. 1)

Plaintiff Kallenbach says he filled out another grievance complaining about Defendant

Morris' response on August 9, 2004.  Again the defendants state it was not a grievance, but a general request.   The plaintiff says after filing this grievance, he was immediately placed in segregation for 72 hours as retaliation.   The plaintiff says when he was released, an Officer Norville instructed him to write an apology letter to Defendant Morris or the officer said the plaintiff would be returned to segregation.

The plaintiff says he filled out another General Request Form on August 12, 2004 stating that he would not write an apology letter.   The plaintiff says less than an hour after refusing to write the apology letter, he was again returned to segregation in retaliation.

Defendant Morris says Plaintiff Kallenbach did fill out a request form on August 12, 2004 complaining about his placement in segregation and that the cell was covered with feces and urine.  Morris says he has no recollection of this incident and apparently there are no incident reports concerning his placement in segregation.  Kallenbach's request form states that he is still refusing to apologize to Defendant Morris.  "Your threats and intimidation might work on other inmates, but they won't work on me." (Plain Memo, Ex 2, August 12,2004 req. form.)

The jail records also demonstrate that Kallenbach was placed in segregation for 72 hours on November 26, 2004 after causing a disturbance.  Correctional Officer Jason Morton filled out a report detailing Kallenbach's behavior. (Def. Memo, Ex. G, November 26, 2004 Report).

The jail records also show that Kallenbach was also placed in segregation for 72 hours on February 18, 2005.  Correctional Officer Abel Dean filled a report stating that Kallenbach had gotten into a fight with another inmate.

Plaintiff Kallenbach admits he was placed in segregation after yelling at guards on November 26, 2004; after an altercation with another inmate on February 18, 2005; and on May 2, 2004 after an altercation with another inmate.  Each time was for a specific term of either 24 or 72 hours.

The plaintiff says he never had a disciplinary hearing and each time he was placed in segregation he was denied access to his possessions.   The plaintiff further points out that the defendants did not have a formal, written policy for dealing with disciplinary procedures or placement of offenders in disciplinary or administrative segregation until December of 2005.   The defendants claim the defendants were placed in segregation for "managerial purposes, not for punitive purposes that require some due process."  (Def. Reply, p. 9.)

C. PLAINTIFF WOODS/ DUE PROCESS AND FIRST AMENDMENT RETALIATION

Defendant Morris says he has no recollection of Plaintiff Woods being placed in segregation in December of 2003 for a few hours or in January of 2004.  Apparently there are no incident reports from either occasion and the plaintiffs do not address either instance in their response to the summary judgement motion.   T

4

There is an incident report on May 2, 2004, from Correctional Officer Dennis Decker stating that Woods was placed in segregation after a fight with another inmate. Officer Michael Cline also wrote an incident report on June 4, 2004, after Woods was involved in another fight with an inmate and was placed in segregation. Officer Cline noted that this was the third or fourth fight that Woods was involved in. (Def. Memo, Ex. J, June 4, 2004 Report).

Defendant Morris says Woods was placed in medical protective custody on August 31, 2004 because he believed that Woods was potentially suicidal. Morris says jail staff had intercepted a letter Woods wrote to a friend asking his friend to send him a needle so he could kill himself. (Def. Memo, Ex. C, Morris Aff, p. 3). Morris says Woods was not returned to the general population until September 23, 2004.

Woods disputes that he was in medical protective custody during this entire time. The plaintiff says he was initially taken to a suicide watch cell with windows so officers could observe his behavior. However, he says after an article came out in the local paper, he was moved to a regular segregation cell.

On September 2, 2004, the local newspaper published the first of three articles written by Woods regarding jail conditions. The plaintiff says on the evening of September 2, 2004, he was moved from the suicide watch cell to a cell in the regular segregation unit. Defendant Morris disputes this claim.

Morris claims on September 16, 2004, he informed Woods that he could leave medical protective custody. Woods instead wrote a letter to Morris stating that he would rather remain in medical protective custody. In the letter, Woods thanks Morris for offering him the opportunity to go back to his cell and admits that his "state of hopelessness is/was real." (Def. Memo, Ex K, ltr.) Woods said he was not ready to deal with all the people in general population just yet.

On September 21, 2004, Woods wrote a request to Morris asking to be returned to his old cell. However, the next day, Woods sent another request to Morris stating that he did not want to return to general population. Later that day, Woods asked if he could be housed in G pod since it only had eight people. Morris approved the transfer on September 23, 2004. (Def. Memo, Ex. L, M, N)

Morris says on December 13, 2004, Woods returned to segregation after an altercation with another inmate. Woods sent Morris a request form describing the altercation and asking to return to his cell in G pod and for his legal paperwork. "Because Woods had been involved with a number of altercations with other inmates, I denied his request at that time to return to G pod but I did grant his request to receive his legal paperwork." (Def. Memo, Ex. C., Morris Aff, p. 4; Ex O, request)

D. PLAINTIFF MABRY/ FIRST AMENDMENT RETALIATION

5

Defendant Morris says the jail records demonstrate that the only time Mabry was placed in segregation was on December 28, 2004, after he got into an argument with another inmate. Correctional Officer Billy Norville prepared an report regarding the incident which states that both inmates were put in segregation for 24 hours after a verbal exchange. The report states that Mabry refused to stop the exchange even after Officer Norville told him to stop or he would be placed in segregation. (Def. Memo, Ex. E, Dec. 28, 2004 Report).

Morris says he has reviewed jail records regarding Mabry and the plaintiff did not fill out a request form or a grievance complaint that he was placed in segregation because he refused to apologize for signing a petition or because Morris called him a "wise ass." (Def. Memo., Ex. C, Morris Aff, p. 1). Defendant Morris says he has no recollection of the event taking place.

Morris claims he never placed any inmate in segregation because they filed grievance or spoke to the media. Morris says inmates in segregation were allowed out of their cell for one hour a day. They were also allowed access to a shower and a telephone. The plaintiffs claim this is not true and have provided a grievance showing that they complained about the lack of showers while in segregation.

E. DENIAL OF NEWSPAPERS AND MEDIA PUBLICATIONS

Defendant Jail Administrator Morris says he did institute a practice at the jail for a period of time prohibiting magazines or newspapers. Morris says he began the policy after inmates were placing the materials in toilets and flooding cells. However, beginning in April of 2005, Morris decided to allow a limited number of newspapers in the jail. Inmates were then allowed to share the newspapers and the practice continued because Morris says he saw no further evidence that inmates were using the papers to flood cells. Morris says during the time that newspapers and magazines were banned, there was televison in the day room of each pod in the jail. The televisions had 24 hour news channels and cable access.

The plaintiff state there is no evidence that inmates ever clogged toilets with newspapers or magazines.

III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

6

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A. DELIBERATE INDIFFERENCE TO PLAINTIFF MABRY'S SERIOUS MEDICAL CONDITION.

Defendant Morris claims Plaintiff Mabry cannot demonstrate that he was deliberately indifferent, nor that he was personally involved in the plaintiff's medical care. Because the plaintiff was a pretrial detainee, his §1983 claim falls under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 6901, 605 (7th Cir. 2002). Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n.2 (7th Cir. 1999).

As the court has previously indicated, the plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*. The second prong of the Eighth Amendment test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Deliberate indifference is "something approaching a total unconcern for [the plaintiffs'] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v Lane,* 959 F.2d 673, 677 (7th Cir. 1992).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha*, 151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford,* 2001 WL 456427 at 6. However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Delays that cause "needless hours of suffering" can constitute harm. *Gil v. Reed,* 381 F. 3d 649, 662 (7th Cir. 2004).

The plaintiff has failed to demonstrate that the defendant violated his constitutional rights. Irregardless of whether the plaintiff could establish that the County Jail Administrator was personally involved in his medical care, he has failed to prove that any staff member was deliberately indifferent to his ear condition.

Defendant Morris admits the plaintiff did not receive the eardrops during the seven days they were prescribed. The defendant says the plaintiff did not mention the lack of drops during this time frame. Even if the plaintiff is correct that he did report it to Nurse Crain, the plaintiff says her response was to tell him where he needed to pick up the drops. She did not refuse to provide the drops. There is no evidence before the court that anyone purposefully denied the plaintiff the eardrops during the seven days they were prescribed. At most, the plaintiff has established that jail staff was negligent, but inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987).

In addition, the undisputed evidence before the court is that the ear drops were prescribed to prevent an ear infection, not for pain. The plaintiff was treated for his complaints of ear pain. There is no evidence in the record that the plaintiff ever suffered from an ear infection or needed any treatment for an ear infection. There is no evidence that the lack of ear drops impacted the plaintiff's health. The motion for summary judgement on this claim is granted.

B. VIOLATION OF PLAINTIFF WOODS AND KALLENBACH'S DUE PROCESS RIGHTS

Defendant Morris says the plaintiffs cannot demonstrate he violated their due process rights because neither plaintiff was placed in segregation for punitive reasons. The Due Process Clause of the Fourteenth Amendment requires that a pretrial detainee cannot be placed in detention or segregation for a disciplinary infraction without notice and an opportunity to he heard. *Rapier v. Harris*, 172 F.3d 999, 1004-5 (7th Cir. 1999). However, "no process is required if he is placed in segregation not as punishment but for managerial reasons." *Higgs v. Carver,* 286 F.3d 437, 438 (7th Cir. 2002). For instance, a pretrial detainee could be placed in segregation without a hearing if he was considered a suicide risk .*Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994). The same is true if the inmate was placed in segregation to protect himself from other prisoners or to protect jail staff from inmates with violent tendencies. *Higgs,* 286 F.3d at 438. "As long as the purpose was indeed a preventive rather than a punitive one, he

8

would not be entitled to notice and a hearing. Indeed, a jail's failure to take steps to prevent harm to the prisoner or to other prisoners might give rise to meritorious suits against the jail." *Id.*

An pretrial detainee may also be punished for misconduct that occurs while he is awaiting trial if that punishment is based on the detainee's actions while in pretrial confinement. However, "pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule. *Mitchell v. Dupnik,* 75 F.3d 517, 524 (9th Cir. 1996); *Rapier,* 172 F.3d at 1003-1004.

The problem then is deciding whether the action taken was punitive or not. In *Rapier,* the Seventh Circuit stated that "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of the detention facility officials, when the restriction or condition is not reasonably related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Rapier,* 172 F.3d at 1005; *see also Bell v. Wolfish,* 441 U.S. 520, 538 (1979).

The defendants state that both Woods and Kallenbach were placed in segregation after either causing disruptions or getting into altercations with another inmate. The defendants say the plaintiffs have presented no evidence that the actions taken were punitive. Instead, the defendants say there actions were managerial and intended strictly to separate the plaintiffs from other inmates to maintain security and safety within the jail.

The defendants repeatedly compare the case before the court to *Hollgarth v. Dawson*, No. 05-2125, 2007 WL 2821251 (C.D. Ill. Sept. 19, 2007). However, the cases are not on point. In *Hollgarth,* the plaintiff was noted as an escape risk when he was first arrested. He was placed in segregation after jail officials discovered inmates were planning an escape. The officers discovered ceiling vents that had been tampered with as well as other items implicating the plaintiff and other detainees. The plaintiff was charged with attempted escape and criminal damage to state property. His main complaint was that he stayed in segregation longer than other detainees. Clearly, the defendants had an obligation to separate inmates planning an escape and place them in segregation to maintain security in the jail.

A closer case to the one before the court is *Holly v Woolfolk,* 415 F.3d 678 (7th Cir. 2005). In this case, the plaintiff was placed in segregation for two days without a hearing after he disrupted a headcount at the jail by blocking a guard's view and refusing to move. After he was released from segregation, he was given a hearing on the claim. The court held that this post-deprivation hearing was sufficient. The Seventh Circuit also noted that a number of cases "consider any nontrivial punishment of a person not yet convicted a sufficient deprivation of liberty to entitle him to due process of law." *Holly,* 415 f.3d at 679-680.

In the case before the court, there was no due process hearing held before or after the plaintiffs were placed in segregation. And while the defendant claims his actions were managerial, he also had no formal, written policy to follow concerning disciplinary procedures or placement of offenders in disciplinary or administrative segregation until December of 2005.

9

The question of whether the actions taken by the defendants constituted punishment for the plaintiff's conduct involve factual questions that may not be resolved at summary judgement.

In addition, the defendants do not address Plaintiff Kallenbach's claim that he was placed in segregation on August 9, 2004 and August 12, 2004 after he wrote grievances or refused to apologize to Defendant Morris. Defendant Morris says he has no recollection of these events, but admits that Plaintiff Kallenbach filled out a request form complaining about his placement in segregation.

The defendants do claim that Defendant Woods was placed in medical protective custody from August 31, 2004 to September 23, 2004. The jail staff had intercepted a letter which caused them to believe that the plaintiff was suicidal. The plaintiff apparently does not dispute this claim, but says he was moved from medical protective custody to a segregation cell on September 2, 2004. The plaintiff says this move was based on an article that was published on this day in which he complained about jail conditions. Unfortunately, the defendants do not address this claim. Was the plaintiff moved to a different cell? Was the cell still subject to closer supervision than general population cells? While it is clear the plaintiff was placed in medical protective custody for appropriate reasons on August 31, 2004, it is not clear if his placement became punitive on September 2, 2004. The motion for summary judgement is denied.

C. VIOLATION OF PLAINTIFFS MABRY, KALLENBACH AND WOOD'S FIRST AMENDMENT RIGHTS BASED ON RETALIATION.

The defendant claims the plaintiffs have no evidence to support their claims that they were retaliated against for speaking to the media about jail conditions or filing grievances. "Inmates retain those constitutional rights that are consistent with incarceration; those rights include access to the media" and "the right to seek administrative or judicial remedy of conditions of confinement." *Hammer v Ashcroft,* No. 06-1750, 2008 WL 125956 at 3(Jan. 15, 2008); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)(citations omitted).

To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law. It would be illogical and destructive of the disciplinary system of a penal institution to say that an act by a corrections officer that is supported by legitimate penological purposes can support a claim of retaliation for exercise of a constitutional right.

The defendants claim the plaintiffs have presented no evidence to support their retaliation claim other than their own supposition. The record before the court demonstrates that Plaintiff

10

Woods was placed in segregation on May 2, 2004, June 4, 2004 and December 13, 2004 after altercations with another inmates. Whether the plaintiff as placed in segregation for managerial reasons or punitive reasons, there is no indication the action was taken to retaliate against the plaintiff. In addition, Defendant Kallenbach admits he was placed in segregation on November 26, 2004 for yelling at guards and on February 18, 2005 and May 2, 2005 for altercations with other inmates.

Defendant Mabry claims he was placed in segregation for refusing to apologize to the defendant. However, the plaintiffs do not address this claim in their response and there is no evidence to support Mabry's claim. Instead, the only evidence before the court is that the plaintiff was placed in segregation on December 28, 2004 after an argument with another inmate. There is no evidence of retaliation against Mabry.

On each of these occasions, jail staff prepared incident reports outlining the conduct of each plaintiff. The plaintiff's do not appear to dispute the basic claims against them. Whether or not the plaintiffs should have been allowed a due process hearing, there is no evidence they were placed in segregation on these occasions to retaliate against them for prior grievances or for talking to the media about jail conditions. The court will grant the summary judgement motion as to these incidents.

There are two occasions the defendants have failed to adequately address. On August 9, 2004 and August 12, 2004, Plaintiff Kallenbach says he was placed in segregation in response to grievances he filed with the defendant and for his refusal to apologize to the defendant. The plaintiff has also presented evidence to support his claim. The plaintiff filed a General Request Form dated August 12, 2004 in which the plaintiff complains about his placement in segregation and says he will not apologize. The defendant says he has no recollection of this incident.

Defendant Woods admits he was placed in medical protective custody on August 31, 2004. However, he says he was moved from the suicide watch cell to segregation on the day an article was published in which he criticized the jail. The defendants have not responded. It is not clear if the plaintiff was moved to segregation and if so, was he still considered to be under medical protective custody? Was there greater supervision in the segregation cell? The court will not grant the motion for summary judgement on these two claims.

D. DEFENDANTS MORRIS AND KNOX COUNTY'S VIOLATION OF THE PLAINTIFF'S FIRST AMENDMENT RIGHTS BASED ON A PUBLICATION BAN.

The defendants maintain that the temporary ban on newspapers and magazines at the jail did not violate the plaintiffs' constitutional rights. Although prisoners retain their constitutional rights while incarcerated, those rights may be limited by the fact of confinement and the needs of the penal institution. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "A prison regulation [that] impinges on inmates' constitutional rights...is valid if it is reasonably related to legitimate penological interests." *Turner v Safley*, 48 U.S. 78, 89 (1987). In addition, the court notes that it is "required to give considerable deference to prison officials. Because the judiciary is 'ill

equipped' to deal with the 'inordinately difficult undertaking' that is prison management, a court may not substitute its judgement for that of prison officials who regulate the relations between prisoners and the outside world." *Lindell v. McCaughtry*, 2003 WL 23218012 (W.D. Wis. Oct. 7, 2003) citing *Thornburgh v Abbott*, 490 U.S. 401 (1989).

The Supreme Court has set forth factors for courts to consider when testing the reasonableness of a regulation. *Turner v. Safely*, 482 U.S. 78, 89-90 (1987). The factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest; (2) whether there are other means of exercising the right in question for prisoners; (3) the impact accommodating the claimed right would have on guards, other inmates and prison resources; and (4) the availability of obvious and easy alternatives to the regulation. *Id.*

The defendants admit there was a ban on all magazines and newspapers in the jail. Defendant Morris says the policy began after inmates were placing the materials in toilets and flooding cells. During this time, the defendant says inmates were allowed to watch television in the day room. In April of 2005, the defendant says he agreed to allow a limited number of newspapers in the jail. Defendant Morris says he continued to allow the newspapers since he saw no further evidence that they were using the paper to flood cells.

The defendants argue the regulation was therefore related to a legitimate penological interest. The defendants also say inmates were left with other ways to obtain news such as watching television and other paper products were not banned. The defendants also point to the recent Supreme Court case of *Beard v. Banks,* 126 S.Ct. 2572, 2578 (2006) which upheld a ban on newspapers and magazines in a prison. However, the court agrees with the plaintiffs that there are several differences between *Beard* and the case before the court.

In *Beard,* the restriction was applied only to the most dangerous and disruptive inmates housed in a Long Term Segregation Unit. The prison chose to ban newspapers and magazines as part of a behavior modification program. The court did not hold that all prisoner publication bans are constitutional if they are based on behavior modification. *See West v Frank,* 492 F.Supp. 1040, 1047(W.D. Wisconsin 2007).

The court still believes this case is more similar to *Mann v. Smith,* 796 F.2d 79 (5th Cir. 1986). In the *Mann* case, a county jail prohibited all pretrial detainees from receiving newspapers or magazines in an effort to reduce the threat of fires and clogged toilets. The inmates were allowed to watch television. There was no evidence that other forms of paper or books were also banned. "The patently under inclusive nature of the regulation strongly suggests that it is indeed an exaggerated response by jail officials to the legitimate need to preserve internal order and discipline and to maintain institutional security."*Id.* at 82, *quoting Bell v. Wolfish*, 411 U.S. 520, 547-48 (1979)**.** *See also Green v. Ferrell,* 801 F.2d 765, 770 (5th Cir. 1986)

12

In the case before the court, the defendants admit the ban did not include all paper materials. (Def. Reply, p. 14).   The court will deny summary judgement.

## CONCLUSION

The court will grant summary judgement on the plaintiffs' claims that: 1) Defendant Morris was deliberately indifferent to the serious medical needs of Plaintiff Mabry when the plaintiff was denied prescription medication for an ear injury; and 2) any claims that defendant Morris retaliated against Plaintiff Mabry on December 28, 2004; Plaintiff Kallenbach on November 26, 2004, February 18, 2005 and May 2, 2005; or Plaintiff Woods on May 2, 2004, June 4, 2004 and December 13, 2004 when the plaintiffs were placed in segregation.

The plaintiffs' surviving claims include: 1)  Defendant Morris failed to protect Plaintiff Mabry on July 8, 2004, when the plaintiff was assaulted after he was handcuffed to another inmate with a history of assaults and mental illness; 2) Defendant Morris violated Plaintiffs Woods and Kallenbach's due process rights when they were placed in punitive segregation without any notice of the charge or formal hearing; 3) Defendant Morris retaliated against Plaintiff Kallenbach on August 9, 2004 and August 12, 2004 and retaliated against Plaintiff Woods on September 2, 2004 when the plaintiffs were placed in segregation for either filing grievances or speaking to the media about jail conditions; and 4) Defendants Morris and Knox County violated the First Amendment when they denied Plaintiffs Woods, Mabry, Judy, Kallenbach and Halloway access to all newspapers and media publications without any rational basis.

**IT IS THEREFORE ORDERED that:**

1. **The defendants' motion for summary judgment [d/e 144] is granted in part and denied in part.   The plaintiffs' surviving claims include: 1)  Defendant Morris failed to protect Plaintiff Mabry on July 8, 2004, when the plaintiff was assaulted after he was handcuffed to another inmate with a history of assaults and mental illness; 2) Defendant Morris violated Plaintiffs Woods and Kallenbach's due process rights when they were placed in punitive segregation without any notice of the charge or formal hearing; 3) Defendant Morris retaliated against Plaintiff Kallenbach on August 9, 2004 and August 12, 2004 and retaliated against Plaintiff Woods on September 2, 2004 when the plaintiffs were placed in segregation for either filing grievances or speaking to the media about jail conditions; and 4) Defendants Morris and Knox County violated the First Amendment when they denied Plaintiffs Woods, Mabry, Judy, Kallenbach and Halloway access to all newspapers and media publications without any rational basis.   All other claims are dismissed.**

2. **A final pretrial conference is scheduled for March 10, 2008 at 10:30 a.m. by video conference.   Plaintiff Kallenbach shall represent the plaintiffs during**

>    the hearing and will appear by video conference for the pretrial hearing.[1]
>    The clerk of the court shall issue a writ for Plaintiff Kallenbach and defense
>    counsel's appearance during the video hearing.  The parties are further
>    directed to submit the proposed final pretrial order by March 6, 2008.  The
>    defendants are reminded that they bear the responsibility for preparing the
>    final pretrial order pursuant to Local Rule 16.3-4(H).  *See Appendix 2* to
>    Local Rules for a sample form. www.ilcd.uscourts.gov/local rules

3.  **The proposed order must include the names of all witnesses to be called for both the plaintiffs and the defendants including:  the name, prison number, and place of incarceration for each inmate or pretrial detainee to be called as a witness; and, the names and addresses of any witnesses who are not incarcerated for whom the plaintiff seeks a trial subpoena.  The plaintiffs must provide the witness fee and mileage fee to any witness they seek to subpoena that is not a current Illinois Department of Corrections employee and they are responsible for timely requesting the subpoenas and serving them on the witnesses.  Fed. R. Civ. P. 45.**

4.  **A jury trial is scheduled for April 7, 2008 at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference.  The Clerk is directed to issue appropriate process for the personal appearance of the plaintiff at the trial and the video appearance of the inmate witnesses listed in the final pretrial order who are not parties to this case and of those IDOC employees listed in the final pretrial order who will appear by video.**

Enter this 21st day of February, 2008.

                              s/ Harold A. Baker
                              _____
                                 HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE

---

[1] The plaintiffs have previously chosen Plaintiff Kallenbach as their spokesperson. *See* January 3, 2005 letter to court. [d/e 5]